UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICHARD A. KIRKHAM, | ) |
| Plaintiff, | ) Case No. C05-2131-MJP-JPD |
| v. | ) REPORT AND RECOMMENDATION |
| DELLA DOE, et al., | ) |
| Defendants. | ) |

## I. INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Richard Kirkham, an inmate at the Washington State Reformatory in Monroe, Washington, is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights complaint. Plaintiff asserts that several medical and classification officers at King County Department of Adult and Juvenile Detention's ("DAJD") Regional Justice Center ("RJC") in Kent, Washington, violated his rights under the Eighth and Fourteenth Amendments by refusing to provide him with certain wrist braces, citing DAJD policy prohibiting the use of medical braces with metal or wooden inserts. Plaintiff's seeks affirmative injunctive relief in the form of his "prescribed" wrist braces against King County and compensatory and punitive damages against each individual defendant. This matter comes before the Court on defendants' Motion for Summary Judgment (Dkt. No. 26).[1] In it,

---

[1] Together with his response to defendant's motion, plaintiff filed a second "Motion for the Appointment of Counsel" which included a "Motion for Order Directing Discovery." Dkt.

defendants argue that because plaintiff failed to demonstrate "deliberate indifference" on the part of the named officers, his Eighth and Fourteenth Amendment claims against those officers fail as a matter of law. Further, defendants assert that the same claims against King County must fail because the DAJD's policy prohibiting metal or wooden brace inserts is based on legitimate security reasons, and reasonable alternatives were provided to plaintiff. After careful consideration of the motion, response, supporting materials, governing law and the balance of the record, the Court recommends that defendants' Motion for Summary Judgment be GRANTED and plaintiff's suit DISMISSED with prejudice.

## II.  FACTS AND PROCEDURAL BACKGROUND

Plaintiff was incarcerated at the RJC from March 6, 2005, to March 16, 2006. Upon admission, he was examined by DAJD Jail Health Services ("JHS"). At the screening examination, plaintiff reported a history of carpal tunnel syndrome,[2] an impairment that can be treated with wrist braces, pain medication, and/or a reduction of activities that cause pain and numbness in the fingers, wrists, hands and elbows. Plaintiff requested pain medication and wrist braces to replace that which he claimed had been previously prescribed by an unidentified medical provider. Dkt. No. 27-2. On March 11, 2005, in response to plaintiff's medical grievance regarding pain medication, RJC's pharmacy provided plaintiff with an increased dosage of ibuprofen. Dkt. No. 4, Ex. B. On April 12, 2006, Dr. Kerry Ashling of JHS examined plaintiff and provided him with "wrist braces." Dkt. No. 27, Ex. B at 3. Dr. Ashling also referred plaintiff to Harborview Medical Center for an electromyogram and nerve conduction study (EMG/NCS), a procedure which assesses the extent of nerve damage and confirms the location of nerve compression. Results from this procedure showed mild

---

No. 32. In light of the Court's report and recommendation, the combined motion is denied.

[2] Carpal tunnel syndrome is "a complex of symptoms resulting from compression of the median nerve in the carpal tunnel, with pain and burning or tingling paresthesias in the fingers and hand, sometimes extending to the elbow." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1812 (30th ed. 2003).

REPORT AND RECOMMENDATION
PAGE - 2

left carpal tunnel syndrome and no evidence of right hand problems.  Dkt. 27, Ex. F at 3; *see also* Dkt. No. 33 at 3, ¶ 12 (Plaintiff's Decl.).

On May 6, 2005, plaintiff was ordered into administrative segregation by King County Superior Court Judge Michael J. Trickey. Dkt. No. 29-2.  Specifically, plaintiff was transferred to RJC's administrative segregation known as the "Nora East Unit." Dkt. No. 4.

The following day, plaintiff appeared at the Sick Call Room in the Nora East Unit, where he explained to Nurse Janice Chapman that he had two velcro wrist splints—presumably the braces provided by Dr. Ashling—and needed "tongue blades" to strengthen them.  Dkt. No. 27 at 3, ¶ 12 (Della Lorenzen Decl.).  Nurse Glen Lirman later approved plaintiff's request, despite the fact that Dr. Ashling approved only the "wrist braces," and made no mention of metal inserts, tongues or stays.  *Id.*  On May 9, 2005, plaintiff, still without the requested inserts, saw Nurse Catherine Ditkoff, to whom he expressed increased pain, numbness and tingling in his hands, and explained that his velcro wrist braces were worthless without tongue blades.  Dkt. No. 27 at 3, ¶ 13.  At this visit, plaintiff was made aware that the medical record made "no mention of . . . tongue blades" and that DAJD policy prohibited all metal and wooden brace inserts in the Nora East Unit because such items posed a significant security risk.  Dkt. No. 27 at 3, ¶ 13 and Ex. D.

On May 10, 2005, plaintiff submitted a JHS Health Request complaining of pain in his wrists and hands due to the lack of sufficient brace inserts.  *Id.* at 2.  Two days later, plaintiff was examined by Dr. Charissa Fotinos, who prescribed pain medication but no inserts, awaiting the EMG/NCS results which, as noted above, reported mild left carpal tunnel syndrome and no evidence of right hand problems.  Dkt. No. 27 at 4, ¶ 15.  After once again being denied brace inserts, plaintiff asked Judge Trickey to reconsider his order placing plaintiff in administrative segregation.  *State v. Kirkham*, Case No. 05-1-05960-1, Dkt. No. 75.  Judge Trickey denied this request.  *Id.*, Dkt. No. 75A.

Nearly three months later, on August 16, 2005, plaintiff submitted an additional JHS

REPORT AND RECOMMENDATION
PAGE - 3

Health Request for brace inserts. Dkt. No. 27, Ex. G. The following day plaintiff was seen by an unidentified JHS nurse, and on August 24, 2005, was examined by Advanced Registered Nurse Practitioner Nancy Ledgerwood VanVleck. Dkt. No. 27 at 4, ¶ 18. Both told plaintiff that metal brace inserts were not allowed under DAJD's policy. *Id.* Nurse VanVleck told plaintiff that she would make him plaster molds in lieu of the prohibited inserts. Dkt. No. 27, Ex. G at 3. These fourteen-inch molds were delivered to plaintiff on or about August 24, 2005. Dkt. No. 33 at 4, ¶ 14. Four days after receiving the molds, plaintiff submitted a JHS Health Request stating that the molds were not easing his pain, were difficult to put on, provided little support, and cut off his circulation. Dkt. No. 27, Ex. H. Nurse Ditkoff responded on August 30, 2005, explaining that metal or wooden brace inserts were unavailable to prisoners or pretrial detainees in administrative segregation. Dkt. No. 27, Ex. H. She further noted that plaintiff's EMG/NCS exhibited mild left hand carpel tunnel syndrome and no problems on his right hand. On September 15, 2005, Dr. Ashling, the physician who first authorized wrist braces equipped with inserts, concluded similarly and communicated the nearly identical information to plaintiff. Dkt. No. 27 at 4, ¶ 19.

    Unsatisfied with these results, plaintiff filed his second Inmate Medical Grievance—his first related to wrist braces—on September 27, 2005. Dkt. No. 4, Ex. C. Upon reviewing this grievance, Assistant Nursing Supervisor Ms. Lorenzen consulted plaintiff's medical chart and "concluded that the issue had been adequately dealt with by medical providers who had seen [plaintiff]." Dkt. No. 27 at 5, ¶ 21 (Lorenzen Decl.). Ms. Judy Hobody received plaintiff's appeal of this decision, and upon her review, agreed with Ms. Lorenzen. *Id.* A month later, on October 29, 2005, plaintiff filed a second Inmate Medical Grievance related to wrist braces and was told to submit an additional JHS Health Request if he was experiencing pain. Dkt. No. 4, Ex. D. Plaintiff waited twenty-eight days to do so, noting severe pain and seeking his "prescribed braces" on November 27, 2005. Dkt. No. 4, Ex. E. Two days later, plaintiff was seen by a JHS nurse, with a December 6, 2005

REPORT AND RECOMMENDATION
PAGE - 4

follow-up examination by Dr. Ben Sanders. Dkt. No. 27 at 5, ¶ 24. Dr. Sanders reported that while plaintiff reported certain levels of wrist and hand pain and swelling, he did pushups regularly, had no trouble removing his shirt, and exhibited no other physical limitations. Dkt. No. 27, Ex. K at 4. Further, Dr. Sanders told plaintiff that braces with metal inserts were not permitted by DAJD. *Id.* According to Dr. Sanders's report, plaintiff stated that he understood this prohibition, continued to express a worsening of his wrist and hand ailments, but stated that he suffered from no functional limitations. *Id.*

Immediately after seeing Dr. Sanders, plaintiff filed his third brace-related Inmate Medical Grievance (fourth overall), asserting that he was "not being given adequate medical care" and demanding his wrist brace inserts. Dkt. No. 4, Ex. F. Ms. Hobody responded on December 12, 2005, explaining to plaintiff that he had been "seen in the medical clinic on 12/6/05 by the medical provider and medical director," both of whom had the power to determine if wrist braces were medically necessary. *Id.* Unsatisfied, plaintiff filed his fourth Inmate Medical Grievance (fifth overall) that very same day. Dkt. No. 4, Ex. G. In it, plaintiff argued that the RJC Medical Staff was denying metal wrist brace inserts solely on grounds of prison security, not medical necessity. *Id.* Assistant Nurse Supervisor Deborah Hansen answered by underscoring the existence of DAJD's policy and noting that "medical believes that you can manage without your braces for awhile." *Id.* This decision was affirmed by Ms. Hobody over plaintiff's appeal. *Id.*

During the review of plaintiff's Inmate Medical Grievance, plaintiff filed a general Inmate Grievance on December 11, 2005. Dkt. No. 4, Ex. H. In it, plaintiff sought specific information regarding the DAJD policy that prevented plaintiff's requested braces with inserts, which he claimed were "prescribed to me by my doctor on the streets."[3] *Id.* This specific grievance appears to have gone unanswered.

---

[3] While plaintiff notes that this grievances has been answered, Dkt. No. 4 at 9, no party has provided the Court with a copy of RJC's disposition.

REPORT AND RECOMMENDATION
PAGE - 5

Plaintiff's final declaration, filed subsequent to defendant's motion for summary judgment, asserts that "[a]t some point between 8-30-05 and 9-15-05," his plaster molds were confiscated during a cell search.[4] Dkt. No. 33 at 4, ¶ 16. Plaintiff further alleges that he was again without any form of wrist brace inserts until March 9, 2006, when he was issued wooden inserts by an unidentified physician, which were then promptly confiscated from plaintiff "at pill line that very night." *Id.* at 5, ¶ 21. This incident led to plaintiff's sixth Inmate Medical Grievance, which reiterated that "doctors on the streets prescribed [him such] braces," and the RJC's denial of the inserts rendered his braces worthless. Dkt. No. 33, Ex. A. Nurse Hobody responded to plaintiff's grievance by restating the DAJD policy regarding metal brace inserts, but also stated that if plaintiff's "inserts were wooden, tongue blades," he could "kite" a JHS Nurse for additional inserts.[5]

Plaintiff was moved from the Nora East Unit to RJC's general population in March 2006, and was eventually transferred to the Washington State Reformatory in Monroe, Washington. At present, he appears to be wearing wrist braces with some form of non-metal insert, although the record is not entirely clear on this point.

### III.   SUMMARY JUDGMENT STANDARD

"Claims lacking merit may be dealt with through summary judgment" under Rule 56 of the Federal Rules of Civil Procedure. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Summary judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if it constitutes evidence

---

[4] Plaintiff insists he filed an JHS Health Request regarding this incident, attributing its absence in the record to the fact that he does "not have access to [his] legal papers at this time." Dkt. No. 33 at 4, ¶ 16.

[5] "Kite" is a short term used for Jail Health Services Health Request form.

REPORT AND RECOMMENDATION
PAGE - 6

01  with which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*
02  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  That genuine issue of fact is "material" if it
03  "might effect the outcome of the suit under the governing law." *Id.*

04  When applying these standards, the Court must view the evidence and draw reasonable
05  inferences therefrom in the light most favorable to the nonmoving party.  *United States v.*
06  *Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006).  The moving party can carry its
07  initial burden by producing affirmative evidence that negates an essential element of the
08  nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence
09  needed to satisfy his burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*
10  *Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

11  Once this has occurred, the procedural burden shifts to the party opposing summary
12  judgment, who must go beyond the pleadings and affirmatively establish a genuine issue on the
13  merits of the case. Fed. R. Civ. P. 56(e).  The nonmovant must do more than simply deny the
14  veracity of everything offered or show a mere "metaphysical doubt as to the material facts."
15  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The mere
16  existence of a scintilla of evidence is likewise insufficient to create a genuine factual dispute.
17  *Anderson*, 477 U.S. at 252.  To avoid summary judgment, the nonmoving party must, in the
18  words of the Rule, "set forth specific facts showing that there is a genuine issue for trial." Fed.
19  R. Civ. P. 56(e).  The nonmoving party's failure of proof "renders all other facts immaterial,"
20  creating no genuine issue of fact and thereby entitling the moving party to the summary
21  judgment it sought.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## IV.   ANALYSIS

23  "It is undisputed that the treatment a prisoner receives in prison and the conditions
24  under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v.*

*McKinney*, 509 U.S. 25, 31 (1993).[6]  The government has an obligation under the Eighth and Fourteenth Amendments "to provide medical care for those whom it punishes by incarceration." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).  However, not every breach of that duty is of constitutional proportions.  "In order to violate the Eighth Amendment proscription against cruel and unusual punishment, there must be a deliberate indifference to serious medical needs of prisoners." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (internal quotation omitted).  The requisite indifference occurs when a prison official denies, delays, or intentionally interferes with medical treatment due a prisoner or pretrial detainee. *Lopez*, 203 F.3d at 1131.  Mere negligence in diagnosing or treating a medical condition is insufficient; a showing of deliberate indifference is required. *Id.*

To meet the deliberate indifference requirement under the Eighth or Fourteenth Amendment, "a prisoner must satisfy both the objective and subjective components of a two-part test." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002).  "[T]he plaintiff must first show a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).  Second, the plaintiff must show that the defendant's response to the plaintiff's serious medical needs was "deliberately indifferent," i.e., that the

---

[6] The Eighth Amendment's prohibition of "cruel and unusual punishments" applies only after conviction and sentence. *Graham v. Connor*, 490 U.S. 386, 393 & n.6 (1989).  Because plaintiff was a pretrial detainee when he was subject the alleged acts and omissions of the named defendants, his cruel and unusual punishment claims arise not under the Eighth Amendment, but rather the Due Process Clause of the Fourteenth Amendment. *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003).  This fact, however, does not significantly alter the Court's analysis, for "the due process clause imposes, *at a minimum*, the same duty the Eighth Amendment imposes:  persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs." *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (emphasis added) (internal quotation omitted).

REPORT AND RECOMMENDATION
PAGE - 8

defendant knew of but disregarded an excessive risk to those needs. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004); *Farmer*, 511 U.S. at 837. "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Toguchi*, 391 F.3d at 1057 (internal quotation omitted). That said, a plaintiff may rely on circumstantial evidence to prove a prison official's knowledge of the risk; the very obviousness of the risk may be sufficient to establish knowledge. *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).

      A.    <u>Plaintiff's Medical Needs Were Sufficiently Serious</u>

The "routine discomfort" that results from incarceration does not constitute a serious medical need. *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994). Rather, such a need exists "if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* (internal quotation omitted). "Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Lopez*, 203 F.3d at 1131 (quoting *McGuckin*, 974 F.2d at 1059-60).

In the present case, while defendants argue that plaintiff received constitutionally sufficient medical care, they do not argue that plaintiff's needs regarding his carpel tunnel syndrome were not serious. Instead, the defendants present the circular argument that "if physicians or medical staff had believed that [plaintiff] was seriously harmed . . . by the DAJD decision to prohibit him from using metal braces or wooden tongue blades for security reasons, they would have taken steps to have DAJD's decision reviewed." Dkt. No. 26 at 10. Further, defendants state that "[c]are below the contemporary standards of decency in this case would have been to provide plaintiff with no alternative, such as plaster molds, to his metal or wooden wrist braces." *Id.*

01    However, the undisputed evidence of record reflects that plaintiff *was* left with "no
02 alternative," as that term is defined by the defendants, for at least 109 days—May 7, 2005, to
03 August 24, 2005, the latter date being the first time plaintiff was issued the plaster molds. Dkt.
04 No. 33 at 4, ¶ 14. Furthermore, it is undisputed that plaintiff suffered from mild left carpel
05 tunnel syndrome at all times pertinent to this suit. Dkt. No. 27, Ex. F at 3 (EMG/NCS results).
06 The record reflects that this condition not only affected plaintiff's daily activities, but was also
07 the kind of injury that RJC medical staff found noteworthy and for which they prescribed
08 treatment. *See, e.g.*, Dkt. No. 27, Ex. B at 3 (Dr. Ashling's notes); Dkt. No. 27, Ex. E at 4 &
09 Ex. H (Nurse Ditkoff's notes); Dkt. No. 27, Ex. F at 2-3 (Dr. Meekins's notes). Plaintiff has
10 thus met step one of the deliberate indifference test.

11    B.    <u>Defendants Were Not Deliberately Indifferent to Plaintiff's Serious Medical Needs</u>

13    To complete a showing of deliberate indifference to serious medical needs, a prisoner
14 must show more than mere negligence, or even gross negligence, on the part of the defendant.
15 *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Wood v. Housewright*, 900 F.2d 1332, 1334
16 (9th Cir. 1990). Prison officials are deliberately indifferent to a prisoner's serious medical
17 needs only when they "deny, delay or intentionally interfere" with his prescribed medical
18 treatment. *Wood*, 900 F.2d at 1334; *Lopez*, 203 F.3d at 1132. In doing so, it must be shown
19 that the prison official knew of but disregarded an excessive risk to plaintiff's serious medical
20 needs. *Farmer*, 511 U.S. at 837. "This is not an easy test for plaintiffs to satisfy." *Hallett*,
21 296 F.3d at 745.

22    Pointing primarily to the report of Dr. Ashling, plaintiff argues that he received
23 inadequate medical care because he was not provided with his "prescribed" and "required"
24 braces with inserts, which plaintiff asserts were prohibited by an unconstitutional DAJD's
25 policy. Dkt. No. 32 at 3-4. However, this is not a case where a prisoner was deprived of
26 "previously prescribed medical treatment," *see Lopez*, 203 F.3d at 1132, or where prison

REPORT AND RECOMMENDATION
PAGE - 10

employees "intentionally den[ied] or delay[ed] access to medical care" or otherwise refused to follow a doctor's instructions  *Estelle*, 429 U.S. at 104-05.  Rather, plaintiff simply asserts that the medical care provided was inconsistent with the conclusions of certain doctors and failed to meet his medical needs. *See, e.g.*, Dkt. No. 33 at 5-6, ¶ 23 (Plaintiff's Decl.). However, the record does not reflect a prescription of wrist braces with metal or wooden inserts; Dr. Ashling appears to have been the lone physician to have prescribed and provided the wrist braces plaintiff desired and, judging by Dr. Ashling's report and plaintiff's actions the following day, these braces *were not* equipped with inserts. *See* Dkt. No. 27, Ex. B at 3 (Dr. Ashling's report); Dkt. No. 27 at 3, ¶ 13 (noting that plaintiff requested tongue blades for his wrist braces almost immediately after seeing Dr. Ashling).  Further evidence in the record supports the conclusion that wrist braces were not medically necessary. *See, e.g.*, Dkt. No. 4, Ex. G (Assistant Nurse Supervisor Deborah Hansen's concluding that "medical believes that you can manage without your braces"); Dkt. No. 27 at 5, ¶ 21 (Lorenzen Decl.) (concluding that the tongue blade issue "had been adequately dealt with by medical providers who had seen [plaintiff]"); Dkt. No. 27, Ex. K at 4 (Dr. Sanders' conclusions regarding plaintiff's minimal functional limitations).  Plaintiff has failed to provide evidence that RJC's medical staff believed that metal or wooden brace inserts were essential to treat his injury.

To the extent plaintiff points to a necessary but phantom "prescription," takes issue with the quality and efficacy of his treatment, or establishes a difference of medical opinion, he raises questions under tort law, not the Constitution. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  Mere disagreement as to a particular course of treatment does not amount to deliberate indifference, and thus does not state a claim under § 1983. *Sanchez*, 891 F.2d at 242; *see also Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (difference of opinion between physician and prisoner concerning appropriate course of treatment does not amount to deliberate indifference).  The constructive concession, made in hindsight, that defendants may have permitted care "below the contemporary standards of decency" for 109 days does

REPORT AND RECOMMENDATION
PAGE - 11

not change this fact for two independent reasons: (1) plaintiff was not deprived of his wrist braces during this time, only certain unprescribed inserts and plaster molds; and (2) such a statement at most states a claim for professional negligence, not constitutional deprivation under § 1983. *See Jett*, 439 F.3d at 1096 ("[A]n inadvertent [or negligent] failure to provide adequate medical care alone does not state a claim under § 1983.") (internal quotation omitted) (second alteration by *Jett* court).

Furthermore, even if couched as a delay-in-treatment allegation, plaintiff's argument fails as a matter of law. While the plaintiff insists he was due a specific type of treatment—i.e., metal wrist brace inserts—he does not allege that medical examination and care were unconstitutionally delayed. Indeed, the undisputed evidence of record establishes that plaintiff was seen no less than ten times by no less than nine RJC medical personnel during the relevant time period. Again, that one (or even some) of these doctors and nurses agreed with plaintiff's or his street doctor's assessment of his ailments does not convert a garden-variety negligence action into a constitutional claim of deliberate indifference. Moreover, assuming for the sake of argument that the delay in this case was constitutionally significant, plaintiff has failed to show that this delay led to further injury, as required by Ninth Circuit law. *McGuckin*, 974 F.2d at 1060; *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam). In sum, the deprivations alleged do not reach constitutional dimensions.

  C. <u>King County's Policy Is Based on Legitimate Security Reasons</u>

Finally, the Court notes that plaintiff's requested metal or wooden brace inserts posed a significant risk to the security of plaintiff, his co-inmates, correctional officers, and prison operations as a whole. Although prisoners and pretrial detainees do not shed their constitutional rights at the jailhouse door, "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979); *see also United States v. Howard*, 463 F.3d 999, 1006 (9th Cir. 2006) (similar). Prison officials must therefore

"be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry." *Bell*, 441 U.S. at 547. For this reason, King County had the right to prohibit inmates from possessing metal or wooden tongue blades as such item may be used as weapons or implements of escape. *See Howard*, 463 F.3d at 1006 ("Corrections officials must produce at least some evidence that their policies are based on legitimate penological justifications."). DAJD's policy did not interfere with plaintiff's constitutional rights not only for the above-explained reasons, but also because reasonable and efficacious alternatives—wrist braces without inserts and/or plaster molds—were available to plaintiff. For these reasons, King County cannot be held liable under § 1983.

## V.  CONCLUSION

The defendants were not deliberately indifferent to plaintiff's serious medical needs of which they were aware. Moreover, because DAJD's policy prohibiting metal and wooden brace inserts is based on legitimate security reasons and provides for adequate alternatives, it does not offend the Due Process Clause of the Fourteenth Amendment. Accordingly, the Court recommends that defendants' Motion for Summary Judgment (Dkt. No. 26) be GRANTED, and plaintiff's § 1983 complaint (Dkt. No. 4) DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 28th day of November, 2006.

JAMES P. DONOHUE
United States Magistrate Judge